Good morning. Good morning, counsel. May it please the Court, my name is Levinsky-Panovich, and I'm appearing here today on behalf of Destin Kakikovic, who is the petitioner in this case. Now, Your Honor, in this case, the immigration judge found that the petitioner was credible, and he found past persecution in this case. Of course, when we have a finding of past persecution, we have a rebuttable presumption, a well-founded fear of future persecution. Now, an immigration judge in this case also found that that presumption was rebutted based on fundamentally changed country conditions in Yugoslavia. So, therefore, the only issue before you today, Your Honors, is whether substantial evidence supports the immigration judge's decision that country conditions in Yugoslavia have fundamentally changed. Now, I'd like to make several points here today. First of all, I would like to point out the timeline in this case, because it is relevant. In October of 2000, Milosevic is removed from power. In November of 2000, we have a new government that's forming into place. And in January and May of 2001, we have the hearings held in this case. So, therefore, we only have a very short period of time, relatively, to review the changes in the country conditions in Yugoslavia. My second point is that the immigration judge relied only on one State Department report in this case, and that is the country conditions report for Yugoslavia for the year 2000. Now, the respondents in this case argued that the immigration judge used other facts as well in consideration of fundamentally changed country conditions, and I would like to address those here. In particular, their brief notes that the immigration judge noted three facts, that in 1999, Ms. Kikovic was issued a passport by the government, the fact that her brother, who was politically active, was a student at a government-run university, and the fact that her father, who was also politically active, was employed at a government-owned company. Now, I note here to the Court that these facts cannot go towards evidence to show that Ms. Kikovic did not have well-founded fear, because she did. She had a presumption of well-founded fear. The only way they can be used is as evidence to rebut that presumption based on some changes in fundamental changes in the country conditions. Now, all three of these facts cannot be used for that, because they all occurred under the Milosevic regime. In 1999, when the passport was issued to Ms. Kikovic, Milosevic was firmly in power. So the fact that she received the passport issued by the government in 1999, when Milosevic was in power, is not relevant to any change in country conditions. Likewise with the situation with her brother. She stated in her affidavit that her brother was a student before he was drafted into the military, which occurred in March of 2000. March of 2000, Milosevic was firmly in power. And she also testified that he was – that her brother resumed his studies when he returned from the military in March of 2001, which was under the new government. So the fact that her brother was a student is not relevant to any change in country conditions. She also stated in her affidavit that her brother was not directly harmed. And she testified later that – That her brother was what? That her brother was not directly harmed. Yes. She testified later that her brother had trouble in the military, but not as – while he was a student at the university. Now, the university was before or after the military? Well, he enrolled in – he was a student before the military. What about after? He resumed his studies after. But this happened just before the – All right. So what he's saying is – right or wrong, what he's saying is that he's considering some of the conditions that apply directly to the individual. And they are that the brother is now enrolled in the university and that the father is still living there. Now, what conclusions you draw from that is something else. But it does not seem to be limited to what happened before the change in government. Well, Your Honor, but she had a presumption of wealth, honor, and fear. And so we have to – That's right. She has a presumption. And the issue is what you said, is a presumption overcome by the change in country conditions as determined on an individualized basis. Right. And the question is, is it enough to overcome the presumption to show what the country conditions report show in general, plus the individual application by saying that her father and her brother are still alive? Let me use the example of the father, because the – they say that the father – her father worked for that same company his entire life. And the record shows that her father lost – was demoted in his job under the militia regime. But nowhere in the record does it say that once there was a change in the government, that he was promoted or treated better or differently in any way. So I don't see how that can be – a fact like that can be used to show that country conditions have improved, just the fact that he worked for a company that – All right. We're talking about two different things in a sense. You started to say that these things were not relevant because they all occurred prior to the change. That I don't think is correct, because I think what the judge was talking about is what is currently the case. So now we're on to the basic argument that you're making, that the – that the evidence does not support a determination that the presumption was rebutted. That's correct, Your Honor. Okay. The respondents also added another element here in their brief, which was not mentioned in the immigration judge's decision. They noted that the Democratic coalition, which was supported by the petitioner, won in the elections, in the Serbian parliamentary elections, and that the Socialist Party, which was dominated by Milosevic, was in the minority. I think we're limited to what's in the report of the IJ or the BIA. That's what we're reviewing. I believe that's the case, too. I just wanted to address it since the respondents mentioned that in their brief. And if I could just mention on that point that – just to point out to the Court that the majority – that the Socialist Party, which was dominated by Milosevic, did not have majority, even at the time when Milosevic was the President. And that's stated in the first paragraph of the State Department report. And what this shows, Your Honor, is that Milosevic did not derive his authority and his power from parliamentary majority. He derived it from holding power over key administrative positions, controlling the police, the military, the courts, and so on. So the fact that the Socialist Party had minority in the elections, in the Serbian parliamentary elections, does not indicate any change in country conditions. Furthermore, those elections that were noted were only for the Serbian parliament. Those were not – that does not go to show that they had minority in the federal parliament. And Serbia was, of course, a state in the Federal Republic of Yugoslavia. Now, my third point here, and this is perhaps the most important, and we touched on it already, is that the immigration judge's decision is not sufficiently individualized. And I'd like to make two points here, if I may. First of all, I believe that it is difficult to use the State Department report. You're saying it's not sufficiently individualized? Are you saying that we ought to remand instead of granting asylum? Well, Your Honor, I believe that generally that is the case when it's not sufficiently individualized. Yes. If it were sufficiently individualized but it were wrong, you would be entitled to asylum. Right. If it's – or you'd be eligible. Well, the immigration judge – If it – just a minute. Sure. If it were sufficiently individualized but they did not overcome the presumption, you would – you could be determined – your client could be determined to be eligible for asylum. If, on the other hand, as you're now arguing, it's not sufficiently individualized, we're required to remand to the BIA, is that what you want? No, Your Honor. I don't believe that this case should be remanded. Well, if it's not sufficiently individualized. We can look at that as an alternative argument here. So you're asking for both? Yes. In the alternative. All right. Certainly the immigration judge in this case attempted to – to – he cited certain facts from the State Department report. It just wasn't sufficiently done. He did not provide any kind of nexus to connect what was happening with those examples – with those particular examples to the situation of the immigration – to the Petitioners. You have one minute left. Do you want to save it for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. My name is Jeffrey Bernstein, and I represent the Attorney General of the United States. In this case, the immigration judge determined that although Ms. Kikovic had been slobodan Milosevic, she did not have a well-founded fear of persecution because Mr. Milosevic had been ousted first in an election and then by the people when Mr. Milosevic took action to try and subvert the election. And the new government, headed in part, the Prime Minister, by a former opponent of Mr. Milosevic, who was the Prime Minister and who had formed the opposition to Mr. Milosevic, had – the government had demonstrated no propensity or actions to persecute former opponents of Mr. Milosevic, such as the Petitioner, and indeed that the evidence of record established that the government was taking steps to ameliorate the conditions of the individuals that had been persecuted by Mr. Milosevic on account of their political activity against him, which is the claim that the asylum applicant, the Petitioner, makes in this case. No evidence compels a contrary conclusion. Well, you know, the country reports are pretty equivocal, wouldn't you say?  Well, what do you make of the start of – if I'm – police committed extrajudicial killings. The number of political and extrajudicial killings increased, and there were indications of complicity at the highest political levels. The targets of such attacks were not limited to opposition activists. Numerous deaths of persons close to the regime in the first half of the year suggested efforts on the part of the government to consolidate its authority and remain in power. Which component of the State Department report? I'm looking at the one for 2001, the 2001 country report. Yeah, but which component, because it deals with three separate areas, Montenegro, Kosovo, and Serbia, and I believe that there were problems certainly in Kosovo. No, this is Milosevic. Well, I understand. I mean, I mean, he's talking about Serbia. But it's the relevant – it's the most relevant country reports. I'm just saying – I read these country reports, and it's not – it's not a rosy situation as portrayed in the country reports. I understand the cherry-picking that the IJ did on some of these, because it's the same report. I'm looking ahead, and it's – I don't believe the immigration judge cherry-picked. I've read the State Department report, and to be honest with you, I can't recall this in the relevant portion of the State Department report. Well, I'll check again, but that's the way I read it. Yeah. Okay. I take your argument, and I'll re-review it. All right. Very good. I'd like to address Ms. Kikovic's arguments in turn. Her arguments are certainly not well taken. She argues first that it was improper to use the State Department report alone to rebut the presumption of well-founded fear. But, of course, this Court's decision in Kaslowski – It can. There's no doubt that it could. If it were adequate to do it, it could. As your decision in Kaslowski says. But, obviously, the State Department report was not the only matter which – But it does have to be individualized. I mean, he's got to apply it to the individual. And it – well, it has to be individualized, and it was individualized in the sense that he determined based upon the lack of any mistreatments following the change in government of the father and the brother, and, of course, the – And you think that's – That was the State Department report. Your position is that the analysis of how it affected her family, the father, the brother, shows individual application to her circumstance. Yes, it does, because they, like her, were opponents, active opponents of Mr. Milosevic's government. They were in the same position as she was. They were similar to the alien – Different parties. Different parties. Your Honor? They were different parties, though. She was in a different movement than the opposition. I think they – I think she was in two parties, and I think she was in the same party as they were. No, that's not – But it really doesn't matter, because the issue is whether or not political opponents of President Milosevic before he was deposed are the subject – have a well-founded fear of persecution. And they were certainly longer-term opponents, and she was – they were just as active as she was. And, again, after the change in government, they remained safe and sound, working, going to school with no problem. And, again, the State Department report does not indicate that former opponents of Mr. Milosevic had any problems. To the contrary, the specific examples given by the immigration judge from the State Department show that that is, in fact, not the case, that the government was, in fact, taking steps to ameliorate the problems of former opponents of Milosevic. There was an amnesty bill for political prisoners, except for those who engaged in terrorism. Ms. Kikovic had not been convicted. The record doesn't reveal that she was convicted of anything. But people who were convicted under Milosevic, there was a bill pending to grant them amnesty. There was pardons of several human rights activists. There was pardons of an anti-Milosevic journalist. So the State Department reveals that the new government was taking active steps, not as quickly as the Petitioner would like, but certainly active steps that were enough. There's other evidence in the record, which wasn't referenced by the immigration judge, in which the government's steps were recognized by articles, et cetera, and others. And noting that the government was committed at this time, as late as March of 2001, committed to moving, not moving away, to committing to create a democracy in this country that was unlike anything that was under Milosevic. And the reports indicate that the security chief had been replaced and that a number of officials in the Milosevic regime had, former officials of the Milosevic regime, had been serious about removing any vestige of the Milosevic era. She was an Otpor activist as well, right? O-T-P-O-R. That's my recollection. The country report says in early September the police also beat an Otpor activist, a minor, and forced him to eat one of the movement's posters. Could you give me the reference you're on? I'm looking at page 86 in the Yugoslavia report, February 2001. Yeah, what page? 493 of the record. Because I'm certainly not aware of that, Your Honor. I don't recall that. I don't. To speak more generically, because in terms of an individualized analysis that we would require in a country report, I think you would agree that one can't just say the country conditions are generally good, but it should address the specific subgroup, shall we say, that's at issue, whether it's an activist or a religion. And he did. And the immigration judge did just that. Well, no. What he said was, as I read it, he gave four examples of how country conditions had improved. He didn't say yours. He was talking generically about opposition groups. And I guess the question is whether that's specific enough in terms of her opposition. My recollection was that in general the immigration judge recited this evidence, recited the evidence regarding the father and the brother, and certainly implicitly, if not explicitly, and I can't remember, indicated that she did not have a well-founded fear of persecution on the base of anti-Milosevic conduct. No, I understand your argument that the individual. You're talking about the father and brother. I'm talking about the country reports and how you think that we ought to analyze those in terms of determining whether the I.J. had conducted an individualized analysis in the country reports. Well, I think the requirement is that the immigration judge conduct an individualized analysis with respect to rebuttal. I think that even if we just talk about the State Department reports, I think that you can glean from the State Department reports exactly what the immigration judge gleaned and exactly what the other evidence of record indicates is that this government is, the post-Milosevic government was at that time committed to, you know, helping out those people who had been persecuted. Well, the evidence was there was a bill pending. You cited that. Is there any evidence that the bill actually passed? Well, there's no evidence in the record, Your Honor, but they were considering it is important. We can't look at anything post the hearing date. So, you know, I don't know. I can find out for you if you like, but I don't think you can look at it. And there was obviously evidence that these people had been pardoned. There was absolutely no evidence in the record in the State Department report or elsewhere in the record that people had been persecuted or there were complaints of persecution or beatings by the government or by any other party of former Milosevic opponents. I mean, what happened here is this Milosevic government was overthrown by the people, by his opponents, essentially. They elected his opponents. He took steps to undermine that election and the people took to the streets. So I don't know if we can put a percentage on it, but a vast number of people in Serbia were people who opposed Milosevic and took steps to get him out. And Ms. Kikovic is one of them. She was one of them who had been persecuted in the past, among many others, who, again, the government was attempting to help out and certainly did not evince any predisposition to punish their supporters, the people who opposed Milosevic, or to allow anybody else to do so. And there's no evidence in this record that compels a conclusion opposite to that. We're well over time already. Thank you. Thank you, counsel. I would just ask that you affirm the decision of the board. Thank you. Thank you. All right. We have about a minute for rebuttal. Sure. Just a quick point, Your Honor. The State Department report does not support the finding by an immigration judge. It shows that, yes, President Milosevic was removed in the presidential elections, but does not show that his structure of government was removed. And Ms. Kikovic was not just a point on Milosevic. She was opposed to his style of ruling, which was a nationalist policy. And the new president that came into power was President Kostunica, a well-known nationalist. There are pictures of him, which is in the record. While he was a constitutional law professor, he was holding an AK-47 in Kosovo at the time where paramilitary groups were persecuting Albanians in Kosovo. So there is serious questions about the direction that this government was going in any case. And the opposing counsel mentioned the security chief that was replaced. The new person that was replaced by, he was an inducted war criminal. And this is also in the record. So, furthermore, the President of Serbia, which is a republic in Yugoslavia, was also led by an inducted war criminal, Milan Milutinovic. So there hasn't been much change other than Milosevic, and he still had his element his paramilitary elements still had considerable power. And unless you have any further questions for me, I would like to close. Thank you, counsel. The case just argued will be submitted.
judges: Lay , Reinhardt, Thomas